Filed 12/13/22; Certified for Publication 1/6/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

DESERT REGIONAL MEDICAL CENTER, INC.,

     Plaintiff and Appellant,

v.

LEAH MILLER,

     Defendant and Respondent.

E076058

(Super. Ct. No. PSC1905547)

OPINION

---

DESERT REGIONAL MEDICAL CENTER, INC.,

     Plaintiff and Appellant,

v.

LYNN FONTANA,

     Defendant and Respondent.

E076069

(Super. Ct. No. PSC1905545)

---

DESERT REGIONAL MEDICAL CENTER, INC.,

     Plaintiff and Appellant,

v.

RENITA ROMERO,

     Defendant and Respondent.

E076205

(Super. Ct. No. PSC1905549)

1

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.  Affirmed.

Hill Farrer & Burrill, Edward S. McLoughlin and Michael S. Turner for Plaintiff and Appellant.

Department of Industrial Relations Division of Labor Standards Enforcement, Max Norris and Jessica L. Fry for Defendants and Respondents.

I.

INTRODUCTION

Plaintiff Desert Regional Medical Center, Inc. (DRMC) appeals trial court orders denying DRMC's first amended petitions to compel nurses Leah Miller, Lynn Fontana, and Renita Romero (Respondents) to arbitrate their labor claims alleging rest and meal break violations by DRMC.  DRMC contends the trial court erred by denying its petitions to compel arbitration and failing to stay Respondents' individual claims until after completion of arbitration of a separate proceeding initiated by Respondents' union (the California Nurses Association (Union)) on behalf of all nurses employed by DRMC in California.  DRMC argues the trial court erred in denying DRMC's petitions to compel arbitration based on a finding DRMC waived the right to arbitrate.  DRMC asserts that the issue of waiver must be determined by the arbitrator, not the trial court, and, even if the court has jurisdiction to decide waiver, there was insufficient evidence to support its finding of waiver.  DRMC further contends Respondents are estopped from arguing waiver because Respondents' Union was responsible for DRMC's delay in petitioning to

2

compel arbitration and agreed, in a separate proceeding, to arbitrate the Union's group grievance.

We reject DRMC's contentions and affirm the order denying DRMC's amended petitions to compel arbitration and request for a stay.

II.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Respondents are registered nurses (RNs) employed by DRMC. DRMC is a California corporation, which owns and operates Desert Regional Medical Center, California, an acute care hospital owned and operated by a subsidiary corporation of Tenet Healthcare Corporation (Tenet). DRMC provides healthcare services and is engaged in interstate commerce within the meaning of the Federal Arbitration ACT (FAA).

At all times relevant to this proceeding, Respondents have been employed pursuant to a collective bargaining agreement (CBA) negotiated between DRMC and the Union. Article 11 of the CBA includes provisions governing RN rest breaks, meal periods, and payment of missed break premiums. Article 9 of the CBA sets forth mandatory grievance and arbitration procedures which must be followed when processing disputes involving interpretation or application of the CBA. Article 9E of the CBA states that individual RNs and DRMC may voluntarily agree to arbitrate "any dispute not otherwise arbitrable under the [CBA]" under the Tenet Fair Treatment Process (FTP), which provides dispute resolution procedures for employment related disputes.

3

Respondents signed a DRMC employment document, entitled "Acknowledgement," referred to herein as an Employment Arbitration Agreement. Under the agreement, Respondents agreed to submit *non-CBA covered claims or disputes* to final and binding arbitration before the American Arbitration Association (AAA).

The following summary of facts and procedural background show the chronological overlapping of the Union group grievance proceedings brought by the Union under the CBA on behalf of all of DRMC's RNs, and Respondents' individual claims decided by the state Labor Commissioner. DRMC appealed the Labor Commissioner's order in state court and then petitioned to compel arbitration of Respondents' individual claims. This appeal concerns the trial court denying DRMC's amended Petition to compel arbitration of Respondents' individual claims.

A. *Union Group Grievance*

In March 2015, the Union filed with DRMC, on behalf of DRMC's RNs, a meal and rest break grievance.

The Union group grievance alleges that DRMC was committing ongoing violations of the CBA and California state law by (1) altering employee timesheets without their consent; (2) refusing to provide employees with their time sheets when requested; (3) refusing to comply with the Union's request for time sheets from all employees; (4) not paying employees for missed meals in accordance with Wage Order requirements; and (5) not paying employees for their missed breaks in accordance with Wage Order requirements. The Union group grievance requested DRMC to immediately

supply the Union with RN timesheets going back three years; to immediately cease and desist the practice of altering timesheets; and to pay employees for all missed meals and breaks.

In May 2015, the Union sent DRMC a letter requesting arbitration of the unresolved meal and rest period grievance under the CBA.

B. *Respondents' Individual Claims*

In July 2015 or 2016, Respondents and three other DRMC RNs each filed their own claims with the Labor Commissioner, alleging violations of Labor Code sections 203, 226.7, and 517, and Wage Order 5. The claimants requested payment of (1) unpaid rest period premium wages; (2) unpaid meal period premium wages; and (3) waiting time penalties under Labor Code section 203.[1]

---

[1] It is unclear from the record whether Respondents' claims were filed in 2015 or 2016. The clerk's transcript does not include the original claims. DRMC's amended Petition states Respondents' claims were filed in July 2015. The Labor Commissioner's July 19, 2019 decision also states that Respondents' claims were filed with the Labor Commissioner in 2015. Respondents' formal administrative complaints, filed with the Labor Commissioner in October 2018, state their claims were initially filed in July 2015. However, Respondents' opposition to the amended Petition and the federal district court order, remanding the matter back to the state court, state Respondents' claims were filed in July 2016.

C. *Union Group Grievance*

The Union's grievance filed on behalf of all of DRMC's RNs (group grievance), was not informally resolved. Therefore, the Union referred the group grievance to arbitration under the CBA. In June 2018, the Union sent DRMC a letter noting that the unpaid meal and break group grievance remained outstanding.

D. *Respondents' Individual Claims Before the Labor Commissioner*

In February 2019, DRMC filed with the Labor Commissioner a brief entitled "Defendant's Jurisdictional Objections," arguing that the Labor Commissioner lacked jurisdiction to hear and decide Respondents' individual claims because they had to be resolved in another forum. DRMC asserted that the CBA required compliance with grievance procedures and arbitration, and Respondents' Employment Arbitration Agreements also required arbitration of Respondents' individual claims. DRMC argued that, at a minimum, the Labor Commissioner was required to defer hearing Respondents' claims until after Respondents' individual claims were arbitrated.

In February and March 2019, the Labor Commissioner heard under Labor Code section 98, Respondents' individual claims.[2] During the hearing, which lasted several

---

[2] As the court explained in *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic I* ), such a hearing is commonly referred to as a Berman hearing, in which "'the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. [This] option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371) and is commonly known as the "Berman" hearing procedure after the name of its sponsor.' [Citation.]" (*Sonic I, supra*, at pp. 671-672; see also *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1127-1128 (*Sonic II*).)

days, the hearing officer heard testimony and the parties presented documentary evidence and arguments.

On July 19, 2019, the Labor Commissioner issued an administrative order, decision, or award of the labor commissioner (Order), which provided a detailed analysis of the Labor Commissioner's findings, analysis, and calculations. The Order stated that DRMC owed Respondents unpaid wages and interest, and ordered DRMC to pay Miller $64,120.64; Romero $58,835.87; and Fontana $51,156.97 for unpaid wages and interest.

E. *Respondents' Individual Claims in Trial Court*

On August 7, 2019, DRMC filed in the Riverside County Superior Court a notice of filing a de novo appeal of the Labor Commissioner's order awarding Respondents unpaid wages. DRMC stated in the notice that it was appealing the Order on the grounds the CBA and Wage Order required resolution of Respondents' individual claims through CBA's grievance and arbitration process. Instead of complying with those grievance and arbitration requirements, Respondents submitted individual wage claims to the Labor Commissioner. DRMC's notice of appeal of the Order further asserted that under federal arbitration law, the CBA grievance and arbitration procedures take precedent and must be exhausted before any other action is taken. DRMC argued that, therefore, the Labor Commissioner lacked jurisdiction over the Respondents' individual claims.

On August 26, 2019, DRMC filed notices of removal of DRMC's action appealing the Labor Commissioner's Order, to the federal district court on the ground the federal court had federal question jurisdiction under the federal Labor Management Relations Act (29 U.S.C. § 185).

On September 23, 2019, Respondents filed a motions to remand DRMC's case appealing the Order back to the state court.

F. *Union Group Grievance*

In October 2019, the Union sent DRMC a letter requesting a meeting to discuss the unresolved Union group grievance and a referral to arbitration.

G. *Respondents' Individual Claims*

On December 4, 2019, the federal district court granted Respondents' motion to remand back to the state court DRMC's action appealing the Labor Commissioner's Order. The federal court granted remand on the ground that "'[t]he right to remove a state court case to federal court is clearly limited to defendants.'" (*Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1260 (9th Cir. 1988 (citing 28 U.S.C. § 1441).) The federal court explained that DRMC was not a defendant and therefore "forfeited its right to a federal forum when it initially filed this action in state court."

At trial setting conferences in January and February 2020, the court set the trial date for DRMC's action appealing the Labor Commissioner's order. The trial date was later vacated and converted to a trial setting conference because of Covid General Order 2020-15, dated April 22, 2020, regarding civil division emergency reorganization.

Upon remand, DRMC filed notices of related cases and requested transfer of DRMC's action appealing the Order, to a different courtroom or courthouse. On March 16, 2020, the trial court denied DRMC's request on the ground DRMC brought its motions in the wrong courtroom.

H. *DRMC's Petition to Compel Arbitration of Respondents' Individual Claims*

On July 23 and 24, 2020, DRMC filed petitions to compel arbitration of Respondents' individual claims and stay the trial court action (Petitions).[3] DRMC alleged in the Petitions that under the FAA, DRMC is entitled to arbitrate Respondents' individual claims in accordance with the terms of the applicable agreements to arbitrate. DRMC requested an order staying the judicial action until arbitration was completed. The Petitions initially were scheduled to be heard on August 27, 2020, but were continued to September 15, 2020, "Due to Courts Unavailability."

---

[3] The material allegations are essentially the same in each of DRMC's Petitions and amended Petitions.

On July 30, 2020, DRMC filed a motion to deem DRMC's cases appealing the Order related and reassigned.

I. *The Union Group Grievance*

The Tenet Health labor relations manager confirmed by letter dated August 12, 2020, sent to the Union and arbitrator Michael Prihar, that the Union and Tenet, on behalf of DRMC, had agreed to arbitrate the Union group grievance regarding "Missed Meals-Time Sheets," and appoint Michael Prihar as arbitrator. Efforts to schedule the arbitration hearing were underway.[4]

J. *Respondents' Individual Claims*

Before the trial court ruled on DRMC's Petitions, DRMC filed on September 4, 8, and 10, 2020, first amended Petitions to compel arbitration and stay action, and notices of hearing. Hearings on the amended Petitions were set for September 29 and 30, 2020, and October 16, 2020. DRMC added in the amended Petitions allegations regarding the CBA provisions requiring nurses to notify their supervisors in advance of inability to take

---

[4] According to DRMC's appellant's reply brief (pp. 11-13) and motion to take additional evidence (Exh. A, pp. 34-35), filed in this court on January 7, 2022, arbitration of the Union group grievance was held on August 23 and October 8, 2021, after DRMC filed its notices of appeal in this action in November 2020. DRMC's motion for this court to take additional evidence is denied on the ground the additional evidenced is irrelevant or already in the record on appeal. It consists of (1) the reporter's transcripts of the arbitration hearing on August 23 and October 8, 2021, and (2) exhibits entered into evidence during the arbitration. The proposed evidence was either not before the trial court when the court denied DRMC's Amended Petitions to compel arbitration in October and November, 2020, or is already part of the record on appeal. In addition, the requested additional evidence is from a different matter and different forum than the instant case.

10

breaks and provide a written explanation as to why a meal break was missed.  DRMC also added allegations that the Union and DRMC had agreed to arbitrate the Union group grievance and selected an arbitrator.  In addition, DRMC alleged it did not commit conduct constituting waiver of its right to arbitrate and Respondents were estopped from arguing DRMC waived its right to arbitrate by the Union agreeing to arbitrate the Union group grievance.  DRMC also added allegations summarizing the FTP grievance resolution procedures and attached a copy of the FTP.  Respondents filed opposition to the amended Petitions and DRMC filed a reply.

On September 29, 30, and November 6, 2020, the trial court heard and took the matter under submission.

On November 4, 2020, DRMC filed a notice of appeal of the October 26, 2020 order denying its amended Petition as to Miller and Fontana.

On November 6, 2020, the court denied DRMC's amended Petition against Romero.

On December 2, 2020, DRMC filed a notice of appeal of the November 6, 2020 order denying its amended Petition as to Romero.

### III.

### STANDARD OF REVIEW AND BURDEN OF PROOF

Both parties assert, and we agree, that this court should review de novo the issues raised in DRMC's appeal because the facts are undisputed and the issue of waiver of the right to compel arbitration turns on questions of law.

11

The determination of waiver, the key issue in this appeal, is generally a question of fact, and "the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes Medical Center v. PacificCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).) "When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; *St. Agnes*, *supra*, at p. 1196.)

Under the FAA, "a party who resists arbitration on the ground of waiver bears a heavy burden [citations], and any doubts regarding a waiver allegation should be resolved in favor of arbitration [citations]." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) Our state waiver rules are in accord. (*Ibid*.) "Although a court may deny a petition to compel arbitration on the ground of waiver (§ 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. [Citations.]" (*St. Agnes*, *supra*, at p. 1195.)

IV.

DISCUSSION

DRMC contends the trial court erred in entering its orders on October 26, 2020, and November 6, 2020, denying DRMC's Petition to compel arbitration. We disagree.

DRMC argues that under the CBA, Employment Arbitration Agreement, and FTP, Respondents were required to arbitrate their individual claims against DRMC.

A. *Law Applicable to Compelling Arbitration*

The FAA makes enforceable a written arbitration provision in a contract evidencing a transaction affecting interstate commerce.  (*Circuit City v. Adams* (2001) 532 U.S. 105, 111-124; 9 U.S.C. § 2.)  It is undisputed that DRMC is involved in interstate commerce.  (*Circuit City v. Adams*, *supra*, at pp. 111-124.)  The FAA also makes enforceable an obligation included in an employment collective bargaining agreement to arbitrate state statutory claims.  (*14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 252, 256-258.)  The FAA authorizes any party aggrieved by the failure or refusal of another to arbitrate under an enforceable arbitration agreement to petition the court for an order to compel arbitration in accordance with the terms of the arbitration agreement.  (9 U.S.C. § 4.)

Section 1281.2 of the California Arbitration Act requires the trial court to grant a petition to compel arbitration unless it finds (1) no written agreement to arbitrate exists, (2) the right to compel arbitration has been waived, (3) grounds exist for rescission of the agreement, or (4) litigation is pending that may render the arbitration unnecessary or create conflicting rulings on common issues.

However, "[a]s a general rule, state statutory wage and hour claims are not subject to arbitration, whether the arbitration clause is contained in the CBA or an individual agreement.  The CBA cannot waive the right to sue under applicable federal or state statutes because these statutory rights 'devolve on petitioners as individual workers, not

as members of a collective organization.'" (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1206 (*Hoover*).)

B. *Written Agreements to Arbitrate*

DRMC argues that under the CBA, Respondents were required to arbitrate their individual claims, and any claims not subject to CBA arbitration must be arbitrated under Respondents' Employment Arbitration Agreement and FTP.

1. CBA Arbitration Terms

The CBA between DRMC and the Union representing DRMC's RNs, including Respondents, contains provisions governing DRMC's RNs' hours of work, overtime, scheduling, wages, premiums, and other compensation. The CBA provisions guarantee that DRMC will comply with applicable California and federal wage and hour requirements, and with Industrial Welfare Commission Wage Order requirements regarding meal and rest periods.

Article 9 of the CBA provides mandatory grievance and arbitration procedures for addressing grievances. A grievance is defined in the CBA as "a dispute as to the interpretation, meaning or application of a specific provision of this [CBA] Agreement." The CBA grievance process requires RNs and the Union initially to attempt to resolve informally RN disputes directly with DRMC. If unsuccessful, the Union may submit to arbitration any unresolved grievance. Under Article 9C, 2 of the CBA, "The arbitrator's decision shall be rendered in writing and shall be final and binding on the parties and on all affected bargaining unit Registered Nurses."

14

The CBA states in Article 9E that individual RNs and DRMC may voluntarily agree to arbitrate "any dispute not otherwise arbitrable under the [CBA]," under the FTP. Respondents voluntarily agreed to arbitrate employment-related disputes by signing an Employment Arbitration Agreement, agreeing to submit any and all *non-CBA covered claims or disputes* with DRMC to final and binding arbitration in accordance with the

2. DRMC Employment Arbitration Agreement

The Employment Arbitration Agreement states that, "[e]xcept to the extent that any applicable [CBA] provided otherwise, I hereby voluntarily agree to use [DRMC's] Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its . . . affiliated companies and entities, . . . I also agree that such arbitration will be conducted . . . under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ('AAA')."

3. The FTP

The FTP agreement states that "Tenet has established the Fair Treatment Process ('FTP'), to provide for review of employment-related disputes between [DRMC] and its employees, culminating in final and binding arbitration of such disputes if they cannot be resolved through the optional internal step." As to applicability and coverage, the FTP agreement to arbitrate "covers all disputes relating to or arising out of an employee's

15

employment with [DRMC] or the termination of employment. *The only disputes or claims not covered by the FTP are those listed in the Exclusions section below*. . . . This is a mutual agreement to arbitrate claims which means that both the employee and [DRMC] *are bound to use the FTP process as the only means of resolving employment-related disputes*, and thereby *agree to forego any right they each may have had to a jury trial on issues covered by the FTP*." (Italics added.)

The first step of the three-step FTP process is optional and consists of submitting a written claim on a "Dispute Resolution Form" to DRMC's Human Resources department. If the employee is dissatisfied with DRMC's response to the claim, then the dispute must be submitted to final and binding arbitration. The required FTP arbitration process is stated in detail. The FTP explicitly states that "[c]ertain issues may not be submitted for review (or exclusive review) under the FTP. . . . [*A]ny non-waivable statutory claims, which may include* claims within the jurisdiction of the National Labor Relations Board, *wage claims within the jurisdiction of a local or state labor commissioner . . . are not subject to exclusive review under the FTP*. This means that *employees may file such non-waivable statutory claims with the appropriate agency* that has jurisdiction over them if they wish, regardless of whether they decide to use the FTP to resolve them. However, *if such agency completes its processing of an employee's claim and the employee decides to pursue further remedies on such claims in a civil action against [DRMC], the employee must use the FTP* (although Step 1 may be skipped). In addition, *the FTP does not apply*

16

*to employees covered by a collective bargaining agreement, unless otherwise agreed to by such employees*." (Italics added.)

The parties dispute whether Respondents' individual claims must be arbitrated under the CBA. Even if not subject to mandatory arbitration under the CBA, any claims not covered by the CBA are subject to the Employment Arbitration Agreement and FTP. However, the FTP expressly states that "*wage claims within the jurisdiction of a local or state labor commissioner . . . are not subject to exclusive review under the FTP*." Respondents therefore could "*file such non-waivable statutory claims with the appropriate agency*." Respondents did so.

DRMC argues that after the Labor Commissioner resolved Respondents' individual claims and DRMC appealed the decision in the superior court, DRMC had a right to arbitrate the matter. While the instant appeal was pending, the United States Supreme Court in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S. Ct. 1906, 1924, (*Viking*), considered whether the employer, Viking River Cruises, Inc. (Viking), had a right to compel arbitration of an employee's "individual" claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). In addressing the issue, the court in *Viking* held that the FAA preempts California law stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, which prohibits splitting PAGA claims into arbitrable "individual" claims, which are based on a labor violation

17

personally experienced by an employee plaintiff,[5] and nonarbitrable "representative" claims, which are brought by the plaintiff employee on behalf of California's Labor and Workforce Development Agency (LWDA) and other employees who also experienced labor violations. (*Viking*, *supra*, at p. 1924.) The Court in *Viking* also concluded that the FAA, however, does *not* preempt the additional *Iskanian* rule prohibiting wholesale waivers of the right to assert representative claims under PAGA. (*Viking*, *supra*, at pp. 1924-1925.)

The Supreme Court explained in *Viking* that the FAA only "preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking*, *supra*, 142 S. Ct. at p. 1924.) The arbitration agreement between Viking and the plaintiff employee purported to waive "representative" PAGA claims. Under *Iskanian*, this provision was invalid as a wholesale waiver of PAGA claims. That aspect of *Iskanian* was not preempted by the FAA. (*Viking*, *supra*, at pp. 1924-1925.) The court in *Viking* thus concluded that Viking had a right to arbitrate the employee's individual claim, but did not have a right to arbitrate the representative PAGA claim. (*Ibid*.)

In *Sonic I*, the California Supreme Court held that "it is contrary to public policy and unconscionable for an employer to require an employee, as a condition of employment, to waive the right to a Berman hearing, a dispute resolution forum

---

[5] In the context of this discussion of *Viking*, use of the term, "individual" claim refers only to the plaintiff employee's personal claim and does not encompass the "representative" claims also included in the PAGA claim.

established by the Legislature to assist employees in recovering wages owed." (*Sonic II*, *supra*, 57 Cal.4th at p. 1124.) The court in *Sonic I* further held that its rule prohibiting waiver of a Berman hearing is not preempted by the FAA. (*Sonic II*, *supra*, at p. 1124.)

Upon granting certiorari, the United States Supreme Court in *Sonic-Calabasas A, Inc. v. Moreno* (2011) 565 U.S. 973, ordered the *Sonic I* judgment vacated and the case remanded to the Supreme Court of California for further consideration in light of *AT & T Mobility LLC v. Concepcion* (2011) 563 U.S. 333. In *Concepcion*, the United States Supreme Court held that the FAA preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts. (*Conception*, *supra*, at p. 352.)

In *Sonic II*, the California Supreme Court held that waiver of a Berman hearing in an arbitration agreement, imposed on an employee as a condition of employment, is no longer prohibited. (*Sonic II*, *supra*, 57 Cal.4th at p. 1124 ["we now hold, contrary to [*Sonic I*, *supra*, 51 Cal.4th at pp. 671-72], that the FAA preempts our state-law rule categorically prohibiting waiver of a Berman hearing in a predispute arbitration agreement imposed on an employee as a condition of employment."].)

Although waiver of a Berman hearing may be permissible under *Sonic II* as a result of FAA preemption, in the instant case, the Employment Arbitration Agreement and FTP do not require the employee to waive a Berman hearing and do not require mandatory arbitration afterwards if requested by the employer. The FTP only requires

19

the employee to arbitrate under the FTP after a Berman hearing if the *employee* decides to pursue further remedies in a civil action against the employer.

Furthermore, regardless of whether Desert Regional had a right to arbitrate respondents' individual claims, Desert Regional waived any such right, as discussed below.

C. *Waiver of the Right to Compel Arbitration*

There is no dispute that Respondents and DRMC, and their authorized agents, signed the CBA and agreed to the terms of the Employment Arbitration Agreement and incorporated FTP. There is also no dispute that DRMC and Respondents agreed to these agreements' arbitration provisions. The principal question here is whether DRMC waived its contractual right, if any, to arbitrate Respondents' individual claims. We conclude that, even assuming DRMC met its burden of establishing there was an applicable written contract requiring arbitration of Respondents' individual claims, DRMC waived any such right by delaying filing the Petition to compel arbitration until July 23 and 24, 2020.

1. Court Jurisdiction to Determine Issue of Waiver

DRMC argues that under *Howsam v. Dean Witter Reynolds, Inc*. (2002) 537 U.S. 79 (*Howsam*), *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp* (1983) 460 U.S. 1 (*Moses*), and *Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955 (*Omar*), the issue of waiver of the right to compel arbitration should have been decided by the arbitrator, not the court. We disagree.

20

DRMC asserts that under federal law, waiver is presumptively for the arbitrator to decide and federal law applies. (See *Howsam*, *supra*, 537 U.S. at pp. 83-85; *Moses*, *supra*, 460 U.S. at pp. 24-25; *Omar*, *supra*, 118 Cal.App.4th at p. 964.) Although the United States Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements' [citation], it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability,*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' [Citations.]" (*Howsam*, *supra*, at p. 83.) "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." (*Id*. at p. 84.)

"At the same time the Court has found the phrase 'question of arbitrability' *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter." (*Howsam*, *supra*, 537 U.S. at p. 84.) For instance, in federal court "the presumption is that *the arbitrator should decide 'allegations of waiver*, delay, or a like defense to arbitrability.'" (*Ibid*., italics added; see also *Moses*, *supra*, 460 U.S. at pp. 24-25.) Thus, in federal court, in the absence of an agreement to the contrary, "'issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits,* notice, laches, *estoppel*, and other conditions precedent to an obligation to arbitrate have been met, *are for the arbitrators to decide*.'" (*Howsam*, *supra*, at p. 85, italics added.)

21

The court in *Omar*, *supra*, 118 Cal.App.4th 955, 965, held that under federal law the issue of waiver of arbitration is for the arbitrator to decide. However, the court in *Omar* explained that "whether waiver claims are determined by the court or the arbitrator depends on whether the arbitration agreement is governed by federal or state law. The authors state that *under California law the court determines waiver, while under federal law the arbitrator must decide whether the delay in demanding arbitration was unreasonable and prejudicial* and, where the delay is unrelated to the litigation process, 'it is improper for the judge to decide this issue.'" (*Id*. at p. 963, italics added; see also Code of Civ. Proc., § 1281.2.)

*Omar* concluded that because all of the waiver allegations concerned *Nonlitigation* conduct, such as a failure to agree to pay the costs of arbitration, the issues involved "contract interpretation and arbitration procedures, which are more properly subjects of determination by an arbitrator than the court." (*Omar*, *supra*, 118 Cal.App.4th at p. 964.) Unlike in *Omar*, Respondents' allegations in the present case raise the issue of waiver in context of DRMC's *litigation* conduct. *Omar* thus does not apply here, and it was proper for the trial court to decide the issue of waiver.

"Because arbitration is an alternative to litigation, a party who actively participates in a lawsuit and thereby resorts to the courts to resolve the dispute may be found, through such inconsistent behavior, to have relinquished its right to arbitrate. [Citing federal authorities.] [¶] Because such a waiver is based upon conduct related to the judicial

22

process, the existence of waiver is a question for the courts to decide." (*Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 234.)

In addition, although in the instant case, the CBA, Employment Arbitration Agreement, and FTP provide that arbitrations shall be governed by the Federal Arbitration Act (FAA) and American Arbitration Association (AAA) procedural rules, California law nevertheless applies to the determination of whether the court or arbitrator has jurisdiction over the issue of waiver. This is because Respondents' individual claims allege state statutory labor code violations and are not brought by the Union under the CBA. In addition, DRMC is seeking to enforce an employment contract arbitration provision which is subject to state law and which does not expressly provide that federal law shall apply to the determination of waiver or that the arbitrator shall decide the issue. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686-687 "[[T]he text of [FAA] § 2 declares that state law may be applied "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.""].)

In California, section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, *the court shall order* the petitioner and the respondent *to arbitrate the controversy* if it determines that an agreement to arbitrate the controversy exists, *unless it determines that*: [¶] (a) *The right to compel arbitration has been waived by the petitioner*." (Italics

23

added.)  The trial court therefore had jurisdiction under state law to determine whether DRMC waived its right to arbitrate Respondents' individual claims.

Thus, regardless of whether state or federal law applies in determining whether waiver is an issue for the court or arbitrator, the result is the same in this case: The trial court had jurisdiction to decide the issue of waiver.

2. Waiver Findings

The term "waiver" has a number of meanings under statutory and case law.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195, fn. 4.)  "While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right.  [Citations.]  In the arbitration context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'  [Citation.]"  (*Ibid*.)  Under federal law, the federal principle of "default" is analogous to waiver.  (*Id*. at p. 1195.)

There is no single test under state or federal law that delineates the nature of the conduct that will constitute a waiver of arbitration.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)  "'"In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure.  [Citations.]"'"  (*Ibid*.)

In assessing waiver of a contractual right to arbitration, the court may consider the following factors when determining waiver: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, ; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 31.)

California courts thus have found a waiver of the right to arbitration in a variety of contexts, "'"ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure."'" (*Fleming Distribution Co. v. Younan* (2020) 49 Cal.App.5th 73, 80 (*Fleming*).) "[A] party that wishes to pursue arbitration must take '"active and decided steps to secure that right"' because an arbitration agreement '"is not . . . self-executing."' [Citation.] 'Mere announcement of the right to compel arbitration is not enough. To

properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute. Both of these actions must be taken to secure for the participants the benefits of arbitration.'" (*Id*. at pp. 80-81.)

As noted in *Fleming*, *supra*, 49 Cal.App.5th at page 80, "Although participating in the litigation of an arbitrable claim does not by itself waive a party's right to later seek to arbitrate the matter, at some point continued litigation of the dispute justifies a finding of waiver. (*Hoover*, *supra*, 206 Cal.App.4th at p. 1204 [courts look at the party's actions, as a whole, in determining whether its conduct is inconsistent with an intent to arbitrate]; see also e.g., *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 446 [four months passed after the filing of an action before the party 'expressed a desire to arbitrate']; []*Platt Pacific, Inc. v. Andelson*[, *supra*,] 6 Cal.4th [at p.] 314 [party may waive the right without the intent to do so by, for example, making an untimely demand to arbitrate]; *Zamora v. Lehman* [2010] 186 Cal.App.4th [1,] 12, 18.)"

Here, DRMC did not timely raise its right to arbitrate Respondents' individual claims or take affirmative steps to implement the process. DRMC delayed filing its Petition to compel arbitration for over four years, which included at least three years from when Respondents submitted their individual claims against DRMC with the Labor Commissioner, until the Labor Commissioner decided the claims in July 2019. DRMC then delayed an additional year until DRMC finally filed in July 2020, a Petition to compel arbitration of Respondents' individual claims. During the three-year period after

26

Respondents filed their individual claims with the Labor Commissioner, DRMC failed to expeditiously file a Petition to compel arbitration and request a stay. Instead, DRMC actively participated in the Labor Commissioner proceedings. DRMC filed objections to the Labor Commissioner's jurisdiction over the claims, argued that Respondents' individual claims had to be arbitrated under the CBA and Employment Arbitration Agreement, and participated in a five-day Labor Commissioner hearing (Berman hearing) in February and March 2019, during which DRMC and Respondents presented documentary evidence and arguments.

Even if, as DRMC argues, the court can only consider DRMC's one-year delay after the Labor Commissioner issued its decision in July 2019, such delay supports a finding of waiver. DRMC's actions during that one-year period, from July 2019 until July 2020, were inconsistent with an intent to arbitrate. Rather than filing a Petition to compel arbitration right after receiving the unfavorable Labor Commissioner's decision, on August 7, 2020, DRMC proceeded to contest the award by filing in the trial court a de novo appeal of the Labor Commissioner's decision. We recognize that such act alone was not sufficient to waive arbitration. (*Hoover*, *supra*, 206 Cal.App.4th at p. 1204.) However, DRMC took additional actions which supported the trial court's finding that DRMC's actions, as a whole, were inconsistent with an intent to arbitrate. In August 2019, DRMC attempted to remove to federal court its state court action appealing the Labor Commissioner's decision without success; filed motions of related cases and requested reassignment and transfer of DRMC's case appealing the Labor Commissioner

27

decision to a different courtroom or courthouse, which the trial court denied in March 2020; objected in May 2020, to Respondents' written discovery; and requested discovery sanctions, which the trial court denied. DRMC finally, on July 23, 2020, filed its Petition to compel arbitration.

DRMC attributes the delay, in part, to the impact of the pandemic on the courts but has not established that this prevented DRMC from filing a petition to compel arbitration, other than for three months when motions were not calendared because of Covid. DRMC has not provided any valid justification for not filing its Petition before the pandemic or for delaying a year to file its Petition to compel arbitration after the Labor Commissioner's July 2019 order.

*Fleming*, *supra*, 49 Cal.App.5th 73, is analogous to the instant case. In June 2017, the *Fleming* plaintiff employee, Alfons Younan, filed with the Labor Commissioner, a labor claim seeking unpaid wages against his employer, Fleming Distribution Company. The employer sent the Labor Commissioner a letter requesting dismissal of the claim because the parties signed an arbitration agreement agreeing to resolve all claims related to employment by binding arbitration. The employer threatened to file a motion to compel arbitration if the claim was not dismissed. Even though the claim was not dismissed, the employer did not file a motion to compel arbitration. In July 2018, the employer filed an answer with the Labor Commissioner, asserting the defense that arbitration was the proper forum, and requesting dismissal of the claim. (*Fleming*, *supra*, at p. 77.)

28

In August 2018, the *Fleming* employer filed a motion with the Labor Commissioner to dismiss the claim on the ground the employee's employment agreement included a provision agreeing to arbitration of his claim. Again, the employer stated that if the claim was not dismissed, the employer would file a motion to compel arbitration. The Labor Commissioner denied the employer's motion to dismiss the claim on the ground the employer had failed to obtain a stay from the superior court. The Labor Commissioner heard the employee's wage claim in December 2018, and issued an order favorable to the employee. Thereafter, the employer filed in the superior court a notice of appeal of the Labor Commissioner's order. A trial was scheduled for March 2019.

In February 2019, the *Fleming* employer filed a petition to compel arbitration, stay proceedings, vacate the Labor Commissioner's order, and dismiss the action. (*Fleming*, *supra*, 49 Cal.App.5th at p. 78.) The *Fleming* employer argued in its petition to compel arbitration that the matter should be arbitrated because the arbitration agreement was governed by the FAA, which preempts California Labor Code section 229. That statute allows employees to pursue their wage claims in court even if they agreed to arbitrate such claims. The employer also argued it did not waive its right to arbitration because it had consistently requested the matter dismissed and arbitrated. (*Fleming*, *supra*, at p. 78.)

The trial court in *Fleming* denied the employer's petition to compel arbitration. The trial court found "Fleming waived its right to arbitration by taking steps inconsistent with an intent to invoke arbitration, including delaying its request to the superior court

29

until after a full hearing took place and the Labor Commissioner issued its order." (*Fleming*, *supra*, 49 Cal.App.5th at p. 79.) In reaching its holding, the court in *Fleming* noted that, when the Labor Commissioner in *Fleming* accepted the employee's complaint and scheduled a hearing on the merits, the employer again stated that it was going to move to compel arbitration if the claim was not dismissed, yet did not do so. The employer also failed to request a continuance or otherwise act in furtherance of asserting that the matter had to be arbitrated. Instead, the employer fully participated in the Labor Commissioner hearing by presenting documentary evidence, witness testimony, and argument, thereby learning the employee's trial strategies at the hearing.

The *Fleming* court concluded that under these circumstances and in light of the employer's "repeated choice not to move to compel arbitration in the trial court, coupled with its full participation in the Labor Commissioner proceedings, the trial court correctly determined Fleming did not 'properly invoke the right to arbitrate' by 'tak[ing] affirmative steps to implement the process' and 'participate in conduct consistent with the intent to arbitrate the dispute.' [Citation.]" (*Fleming*, *supra*, 49 Cal.App.5th at p. 82.)

The *Fleming* court added that, "[e]ven after the Labor Commissioner issued its order, Fleming appealed from the order but did not exercise its right to immediately seek to compel arbitration and stay the superior court proceedings. Further, the trial court's register of actions indicates the parties engaged in discovery after the filing of the notice of appeal; there are multiple entries relating to Younan's request for 'compliance with . . . [his] request for production of documents' and other discovery, as well as a lengthy court

30

order granting Younan's discovery requests." (*Fleming*, *supra*, 49 Cal.App.5th at p. 83.) It was not until *20 months after the employee filed his Labor Commissioner complaint* and *2 months after the Labor Commissioner issued its decision* that the employer finally filed a superior court petition to compel arbitration. The *Fleming* court concluded that the trial court properly found this delay was not reasonable and therefore supported a finding of waiver. (*Fleming*, *supra*, at p. 83.)

In the instant case, DRMC's delay filing its Petition to compel arbitration was even longer than the delay in *Fleming*. Respondents filed their individual claims in July and September 2015 or 2016, and the Labor Commissioner issued its award in July 2019. DRMC did not file its Petitions to compel arbitration and request for a stay until July 2020. DRMC thus delayed filing its Petitions at least four years after Respondents filed their individual claims with the Labor Commissioner, and 12 months after the Labor Commissioner issued its award. As in *Fleming*, this delay was not reasonable or consistent with the intent to arbitrate the dispute. During the delay, DRMC participated in Labor Commissioner proceedings, appealed the Labor Commissioner's decision in state court, participated in discovery proceedings, unsuccessfully attempted to remove its state court case to the federal court, and filed unsuccessful motions to have the case related to other cases and transferred to a different courtroom.

We recognize that the instant case is distinguishable from *Fleming* in that *Fleming* did not involve a simultaneous Union grievance subject to arbitration under a CBA. *Fleming* nevertheless supports the determination that, under the circumstances in the

31

instant case, DRMC's delay waived any right it may have had to arbitrate the individual claims.

In *Fleming*, the employer argued there was no waiver because, despite its delay in filing its petition to compel arbitration, the employee failed to show he was prejudiced by the delay. The employer asserted that a finding of prejudice required that the employer's delay filing the petition to compel arbitration and request for a stay must have caused the employee "to incur extensive costs and legal expenses and/or an unfair disadvantage that would materially prejudice his position in any future arbitration." (*Fleming*, *supra*, 49 Cal.App.5th at p. 83.) Even in the absence of such circumstances, the *Fleming* court disagreed "there was 'no evidence' of prejudice to support a waiver." (*Ibid*.) The *Fleming* court concluded there was sufficient evidence of prejudice because "prejudice can be found 'where the petitioning party has unreasonably delayed seeking arbitration or substantially impaired an opponent's ability to use the benefits and efficiencies of arbitration.' [Citation.]" (*Ibid*., quoting *Hoover*, *supra*, 206 Cal.App.4th at p. 1205; see also *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 216 ["a defendant should timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation."].)

The *Fleming* court explained that, although the employee did not have an attorney during the Labor Commissioner proceedings and therefore did not suffer monetary loss in the form of attorney fees and costs, he was represented in the superior court action and engaged in discovery. The employee also suffered the prejudice of waiting several years

32

to collect wages that at least one tribunal determined he was owed, when the matter could have been arbitrated earlier, assuming arbitration was proper. "As noted, the benefit of arbitration is that it is a relatively efficient and cost-effective way of resolving disputes." (*Fleming*, *supra*, 49 Cal.App.5th at p. 83.) By the time the employer filed its petition to compel arbitration, "all benefits of a speedy resolution [the employee] could have obtained through arbitration have been lost. (*Sobremonte v. Superior Court*, *supra*, 61 Cal.App.4th at p. 996 ['any benefits they may have achieved from arbitration have been lost']; *St. Agnes*, *supra*, 31 Cal.4th at p. 1204 [prejudice is found where 'the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration'].) We conclude [the employee] suffered cognizable prejudice." (*Fleming*, *supra*, at pp. 83-84.)

As in *Fleming*, Respondents suffered cognizable prejudice of waiting years to collect wages that the Labor Commissioner determined were owed, when the matter could have been arbitrated earlier. DRMC argues there was no prejudice because, unlike in *Fleming*, DRMC could not compel arbitration until the Labor Commissioner proceedings were completed in July 2019. But even assuming this is true, DRMC unreasonably delayed filing its Petition to compel arbitration for a year after completion of the Labor Commissioner proceedings.

*Fleming* notes that, "although prejudice has been held to be 'critical' in determining waiver, we also note the Supreme Court has cautioned courts to examine

each case in context: 'no single test delineates the nature of the conduct that will constitute a waiver of arbitration.' (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) Moreover, a party's unreasonable delay has also been considered a significant and determinative issue." (*Fleming*, *supra*, 49 Cal.App.5th at p. 84.) The *Fleming* court further noted that the California Supreme Court in *Wagner Construction Co. v. Pacific Mechanical Corp.*[, *supra*,] 41 Cal.4th [at pp.] 29-30, "observed that a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate. '[A] party may [not] postpone arbitration indefinitely by delaying the demand. . . . [¶] When no time limit for demanding arbitration is specified, a party must still demand arbitration within a reasonable time. [Citation.] . . . "[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case."'" (*Fleming*, *supra*, at p. 84; see also *Hoover*, *supra*, 206 Cal.App.4th at p. 1205.)

After *Fleming* was decided, the United States Supreme Court recently held in *Morgan v. Sundance, Inc.* (2022) 142 S. Ct. 1708 (*Morgan*), that under federal law a showing of prejudice is not required to establish waiver of the right to arbitrate. After *Fleming* was decided, the United States Supreme Court recently held in *Morgan*, that under federal law, a showing of prejudice is not required to establish waiver of the right to arbitrate.

In *Morgan*, Robyn Morgan sued her former employer, Sundance, Inc., for committing federal labor law violations. As part of her job application, Morgan agreed to

"'use confidential binding arbitration, instead of going to court.'" (*Morgan*, *supra*, 142 S. Ct. at p. 1711.) Sundance did not initially move to compel arbitration or stay the case. Over a period of 8 months, Sundance filed a motion to dismiss, filed an answer, and engaged in mediation, before moving to compel arbitration.

The district court denied Sundance's motion to compel arbitration based on waiver. The Eighth Circuit disagreed on the ground Morgan suffered no prejudice. Morgan sought review from the U.S. Supreme Court, which agreed to hear the case to resolve a split in the federal courts of appeals as to whether prejudice is required to show a waiver of the right to arbitration under the FAA. The U.S. Supreme Court in *Morgan* agreed that prejudice was not required to show a waiver based on section 6 of the FAA (9 USCA § 6), which provides that any application to the court "shall be made and heard in the manner provided by law for the making and hearing of motions," except as otherwise therein expressly provided. (9 U.S.C. § 6; *Morgan*, *supra*, 142 S. Ct. at p. 1714.)

The court in *Morgan* explained that the phrase "any application" in section 6 of the FAA includes applications to stay a court case and compel arbitration under sections 3 and 4 of the FAA and noted that "a federal court assessing waiver does not generally ask about prejudice." (*Morgan*, *supra*, 142 S. Ct. at p. 1713.) The *Morgan* Court thus concluded that the Eighth Circuit erred in imposing an arbitration-specific requirement of prejudice. It noted that the courts that required prejudice did so based on the federal policy favoring arbitration. The *Morgan* court found that that policy "does not authorize

federal courts to invent special, arbitration-preferring procedural rules" such as the judicially imposed rule requiring a finding of prejudice when ruling on waiver.

This is because, "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." (*Morgan*, *supra*, 142 S. Ct. at p. 1713.) The usual federal rule of waiver therefore does not include a prejudice requirement. (*Id*. at p. 1714.) This case is distinguishable from *Morgan* in that the instant case concerns state statutory rights and law, rather than rights asserted under federal law.

Even assuming that under state law in the instant case a showing of prejudice is required, DRMC's delay petitioning to compel arbitration was prejudicial under *Fleming*. It significantly diminished the benefits of arbitration by postponing Respondents' recovery, wasting Respondents' and others' time participating in litigating the labor dispute in a separate forum before arbitrating the case, and providing DRMC with the unfair advantage of participating in a trial run of litigating the case before the Labor Commissioner. Thus, regardless of whether state law or federal law applies, the trial court's findings of waiver and prejudice are well supported by the record.

We thus conclude the trial court properly determined that DRMC waived its right to arbitration based on DRMC's delay in petitioning to compel arbitration. DRMC's conduct was inconsistent with an intent to arbitrate Respondents' individual claims, DRMC invoked the litigation machinery, including filing a de novo appeal of the Labor Commissioner's decision in state court, and DRMC delayed petitioning to compel

36

arbitration for a substantial period of time, which was prejudicial to Respondents. The trial court therefore did not err in ruling that DRMC waived any right DRMC may have had to arbitrate Respondents' individual claims.

### 3. Estoppel

DRMC argues the Union's delay in initiating arbitration of the 2015 Union group grievance until August 2020, estopped Respondents from arguing DRMC waived its right to arbitrate. DRMC asserts that Respondents are estopped from blaming DRMC for the delay or for any related prejudice, because the Union agreed to arbitrate the Union group grievance, and any delay between May 2015 and August 2020, was voluntarily caused either by Respondents, their Union, or the Labor Commissioner. We disagree.

First, the Union group grievance and related proceedings are separate and independent proceedings from Respondents' individual claims brought by each respondent, and not by the Union. Second, Respondents' individual claims were filed and decided in a different forum than the Union group grievance. Respondents submitted their claims to the Labor Commissioner for resolution. The Union submitted its group grievance to arbitration under the CBA. Third, although the Union was a party, acting on behalf of Respondents as well as other RNs when pursuing the Union group grievance, the Union is not a party to Respondents' individual claims. Fourth, Respondents were not responsible for the Union's delay initiating arbitration of the Union group grievance or for the Union agreeing to arbitrate the Union group grievance. Respondents are thus not estopped from arguing DRMC waived arbitration of Respondents' individual claims.

37

## V.

## DISPOSITION

The trial court's orders on October 26, 2020, and November 6, 2020, denying DRMC's amended Petitions to compel arbitration and for a stay are affirmed. Respondents are awarded their costs on appeal.

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

Filed 1/6/23

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

**ORDER**

DESERT REGIONAL MEDICAL CENTER, INC.,     E076058
  Plaintiff and Appellant,
  v.                    (Super. Ct. Nos. PSC1905547,
LEAH MILLER,                    PSC1905545 & PSC1905549)
  Defendant and Respondent.
_____

DESERT REGIONAL MEDICAL CENTER, INC.,     E076069

  Plaintiff and Appellant,
  v.
LYNN FONTANA,
  Defendant and Respondent.
_____

DESERT REGIONAL MEDICAL CENTER, INC.,     E076205
  Plaintiff and Appellant,
  v.                  ORDER CERTIFYING
RENITA ROMERO,            OPINION FOR PUBLICATION
  Defendant and Respondent.
_____

THE COURT

     Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on December 13, 2022, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

     IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on December 13, 2022, is certified for publication.

     CERTIFIED FOR PUBLICATION

                                CODRINGTON
                                          J.

We concur:

RAMIREZ
         P. J.

RAPHAEL
         J.